UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
NOV 23 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-25-GWU

MARGARET A. PHELPS,                                       PLAINTIFF,

VS:                    MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,         DEFENDANT,

## INTRODUCTION

Margaret Phelps originally brought <u>Phelps v. Barnhart</u>, London Civ. A. No. 02-26-GWU to obtain judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits. After a period of administrative reconsideration prompted by the Court's Order and Judgement of September 18, 2002, the case is again before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. <u>See</u> 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4. Can the claimant's severe impairment(s) be expected to result in

1

death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d

2

654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.

3

Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an

4

occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Phelps, a 52 year-old former sewing machine operator with a "limited" education, suffered from impairments related to cervical, thoracic and lumbar myofasciitis, degenerative disc disease of the thoracic spine, mild disc protrusion and narrowing of the L4-L5 neuroforamina, a history of gallstone pancreatitis, hypothyroidism, hypertension, and sporadic bowel incontinence. (Tr. 310-311). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 319). Since the claimant was found to be able to return to her past relevant work, she could not be considered totally disabled. (Tr. 319).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the

5

plaintiff.

Phelps indicated on the Work History Report that her past work as a sewing machine operator had been medium in exertion. (Tr. 105). This exertional level is above the light level restriction found by the ALJ. However, the administrative regulations indicate that past work can be defined as either how the claimant actually performed it or as it exists generally in the national economy. 20 C.F.R. Section 404.1560(b)(2). The ALJ cited Section 787.682-058 of the <u>Dictionary of Occupational Titles</u> (DOT) concerning the position of sewing machine operator in determining that this job was generally performed at the light level in the national economy. (Tr. 14). Although the claimant asserts that her past work should have been considered medium level, she has not cited any DOT sections or other authority to contradict the ALJ's finding. Therefore, the ALJ properly relied upon the DOT to find that Phelps could return to her past relevant work.

Multiple medical sources offered opinions consistent with the ability to perform the past work. Dr. Bart Goldman examined Phelps in July of 1999 and specifically opined that she suffered from no impairments. (Tr. 288). This opinion supports the administrative decision. Dr. Amr El-Naggar saw her in May of 1999 and indicated that the plaintiff would be limited to lifting, pushing and pulling 20 pounds as well as no lifting above her head. (Tr. 177). Based upon the DOT, these restrictions appear compatible with the plaintiff's past work. Furthermore, Dr. El-Naggar appears to have intended these restrictions for only three months rather than permanently. (Tr. 177). Thus, this opinion also supports the administrative decision. Dr. Tinsley Stewart, another examiner, limited Phelps from lifting more than 20 to 30 pounds, a restriction also consistent with the ALJ's findings. (Tr. 272). Dr. Stewart also indicated that the

6

claimant should do no bending, stooping, or crawling.[1] (Tr. 272). Section 787.682-058 of the DOT states that these physical demands are "not present" in the job of sewing machine operator. Finally, based upon the DOT, the physical restrictions identified by Dr. James Ramsey (Tr. 222-232) and Dr. Timothy Gregg (Tr. 233-243), would not appear to preclude performance of the plaintiff's past sewing work. These reports provide substantial evidence to support the administrative decision.

Dr. Harold Rutledge indicated in January of 2000 that Phelps was restricted to sedentary level work and should not lift more than 10 to 15 pounds. (Tr. 199). In April of 2000, the physician stated that she could perform light duty work. (Tr. 193). He also indicated that repetitive use of the wrist should be precluded without identifying the objective reasons for restriction. The Court notes that carpal tunnel syndrome was ruled out as an impairment and other physicians did not include such a restriction. Dr. Ramsey opined that Dr. Rutledge's January, 2000 lifting limitation was too restrictive and other examining sources, such as Dr. Stewart and Dr El-Naggar, contradicted this limitation and issued lifting restrictions more in line with the light level restriction suggested in the April, 2000 opinion of Dr. Rutledge.

More severe physical restrictions than those found by the ALJ were reported by Dr. Nancy West, a treating source, in April of 2001 and again in March of 2003. (Tr. 267-268, 365-369). Dr. West related these restrictions primarily to cervical and lumbar problems. However, the doctor's progress notes indicate that she saw the patient for hypertension, thyroid problems, yeast infections, and nausea. (Tr. 208-221, 254-263). Dr. West does not appear to

---

[1]Dr. Stewart cited multiple MRI studies in his report. (Tr. 271-272).

have been a treating source for the claimant's musculoskeletal problems. Therefore, her opinion was properly rejected by the ALJ.

Dr. Rodney Oaks treated Phelps in the mid-to late 1990's. In April of 1999, just after the plaintiff's alleged onset date, Dr. Oaks opined that she could not lift more than five pounds with no twisting or bending. (Tr. 167). The doctor's opinion was based upon the assumption that Phelps suffered from carpal tunnel syndrome. (Tr. 167). However, this diagnosis was later ruled out by Dr. El-Naggar. (Tr. 177). Therefore, Dr. Oaks' opinion was not binding on the ALJ.

Dr. Joseph Kutz also indicated in April of 1999 that Phelps was currently unable to work. (Tr. 151). However, she was reported to not yet be at maximum medical improvement and, so, this was not a permanent limitation.[2] (Tr. 151). Dr. Kutz did not see the patient again who was referred to Dr. El-Naggar. (Tr. 151). Therefore, under these circumstances, this opinion was not binding on the ALJ.

The ALJ properly determined that Phelps did not suffer from a "severe" mental impairment. In March of 2003, Dr. West identified a number of significant mental restrictions. (Tr. 362-364). This was approximately two years after the record indicates that Dr. West last saw the plaintiff in April of 2001. The physician's progress notes do not report treatment for mental problems or a referral for a mental health examination. (Tr. 208-221, 254-263). Therefore, under these circumstances, the ALJ could properly reject this opinion of Dr. West.

Phelps argues that the ALJ did not properly evaluate her subjective pain

---

[2]On March 26, 1999, apparently Dr. Kutz had indicated only a six week restriction to part-time work. (Tr. 161).

8

complaints. Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Phelps was found to be suffering from a potentially painful condition. However, even if she could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs. First, the medical evidence does not appear sufficient to confirm the severity of the alleged pain. Second, objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain. Dr. Rutledge thought that the plaintiff could perform work activity (Tr. 193) and Dr. Goldman opined that she demonstrated "significant symptom magnification" upon examination (Tr. 289). Therefore, the ALJ would appear to have properly evaluated Phelps' pain complaints.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this this opinion.

This the _23_ day of November, 2005.

*G. Wix Unthank*
G. WIX UNTHANK
SENIOR JUDGE